BOBBITT et al. v. ALAMO CASUALTY CO.

No. 12245.

Court of Civil Appeals of Texas. Galveston.

June 21, 1951.

Rehearing Denied July 12, 1951.

Kenneth H. Aynesworth, Jr. and Frank E. Mann, of Houston, for appellant.

Vinson, Elkins & Weems and W. B. Browder, Jr., all of Houston, for appellee.

CODY, Justice.

This appeal involves two questions, namely, (1) whether Elmer W. Laird, deceased was an employee of Elmer W. Laird, Inc., a corporate subscriber under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., within the meaning of that act, and, if so, (2) whether, under the facts, the deceased was killed in the course of his employment?

Elmer W. Laird, Inc., was a dealer in new and used automobiles. Shares of its capital stock at the time of the deceased's death, except qualifying shares, stood in the name of Mrs. Laird, deceased's wife. Occupying the same quarters with Elmer W. Laird, Inc., was the Houston Acceptance Corporation, a finance company the capital stock of which also stood in the name of the deceased's wife, except qualifying shares. For purposes of this opinion it is sufficient to say that Elmer W. Laird, Inc., sold notes, taken by it in payment for automobiles which it sold, to the Houston Acceptance Corporation. The finance corporation was not a subscriber under the Workmen's Compensation Act.

The court trying the case below without a jury rendered judgment denying appellants, who were the deceased's wife and minor child, compensation benefits sought by them by cross-action in the compensation carrier's suit to set aside the Board's award. No conclusions of fact or law were filed or requested.

Appellants predicate their appeal upon four points, which are, substantially:

(1) The uncontroverted evidence compels the conclusion that the deceased was an employee of the corporate employer bearing his name, and not an officer nor its alter ego.

(2) A finding that the deceased's salary was not included in calculating the premium on the workman's compensation insurance policy would not have been supported by the evidence and would constitute no defense.

(3) A finding that the deceased's death resulted from an injury received while willfully intending and attempting to unlawfully injure some other person would be wholly without support in the evidence.

(4) The uncontroverted evidence compels the conclusion that the deceased's death resulted from an injury having to do with and originating in the business of both his joint employers while engaged in the furtherance of the affairs and business of the insured as well as the uninsured employer.

We overrule appellants' points as not presenting reversible error.

On appeal the evidence which was presented before the court must be viewed in the light which is most favorable to supporting the court's judgment and it will, accordingly, be so stated.

We will present first the gist of the evidence which was sufficient to support the conclusion presumably arrived at by the court that Elmer W. Laird, deceased, was not an employee of Elmer W. Laird, Inc., a subscriber under the Workmen's Compensation Act, within the meaning of the act. It appears from the evidence:

That Elmer W. Laird, deceased, and Mrs. Ruby Lee Laird (now Bobbitt) were married in 1934. Mrs. Laird's evidence was to the effect that at the time of the marriage she had considerable money and

that he had some. At the outset of the marriage their money was co-mingled, and apparently thereafter they maintained a joint bank account up until the time that Laird was killed; that all through their married life each exhibited unusual energy and enterprise. They engaged in various businesses at various places in Texas and Louisiana. Mrs. Laird testified that when she and the deceased went into business it was to make money "and we took this money to make money with it. It didn't make any difference whether I spent it for something to make money with or he took it and spent it to make money. We didn't make any difference. We wanted to get up and we worked with that money."

"Q. Did you prosper all together, or did you have your ups and downs? A. We have been practically broke and we have made money."

In 1943 Mr. and Mrs. Laird returned to Houston where they had also been in business before and established the business of buying and selling automobiles and conducted it under the name of Elmer W. Laird. Mr. Laird was in charge of the buying and selling and advertising and Mrs. Laird conducted the financial end of the business. They truly had a marriage partnership. Prior to the incorporation of the business both Mr. and Mrs. Laird, individually, withdrew money from the business whenever they saw fit and put money back into the business whenever they saw fit, keeping their money in a joint bank account. In 1946 they incorporated the business "as is." The idea of having the business incorporated originated with Mrs. Laird, but Mr. Laird did not oppose it. The corporate name, as already indicated, was Elmer W. Laird, Inc. At the time of the incorporation there were only two blocks of shares of substantial amount issued, one to Mrs. Laird and the other to her mother, a Mrs. Brady, but sometime afterward the stock which had been issued to Mrs. Brady was transferred to Mrs. Laird without consideration, and there is no contention that Mrs. Brady ever owned any beneficial interest in the stock which had been issued

to her. The other shares of stock were evidently issued as qualifying shares, consisting of one share each. One such share was issued to Elmer W. Laird. On the incorporation papers he appeared as a director, but as the corporate structure was actually set up he was neither a director nor held any office provided for in the charter or bylaws.

The Houston Acceptance Corporation, as above indicated, handled the financing for Elmer W. Laird, Inc. Also in that corporation the shares of stock stood in the name of Mrs. Laird, except some qualifying shares. After the business of buying and selling automobiles, which had been conducted in the name of Elmer W. Laird, was incorporated under the name of Elmer W. Laird, Inc., its business continued to be conducted in all material respects as it had been conducted prior to the incorporation, with an exception to be hereafter stated. Both Mr. Laird and Mrs. Laird withdrew funds from the business when they saw fit and put money back into the business when they saw fit, respectively. However, after the corporate structure had been set up it was arranged that Mr. Laird should be paid a salary of $9,000.00 a year, payable semi-annually in equal installments. Mrs. Laird was also paid a salary in two equal installments semi-annually. However, as before incorporation, their withdrawals were made from the business as they saw fit but semi-annual adjustments were made against their respective salary accounts by the auditor. The court could have inferred that these salary accounts were for income-tax purposes or other good and sufficient reason.

■ We do not understand that appellants are insisting that the shares of stock which stood in the name of Mrs. Laird were her separate property. In any case, the court was authorized to find, and presumably found, that the ownership of the shares of capital stock of Elmer W. Laird, Inc., was community property of Elmer W. Laird and his wife. Article 4619, R.C. S., Vernon's Ann.Civ.St. art. 4619; Smith v. Bailey, 66 Tex. 553, 1 S.W. 627; Hardee, Sheriff, v. Vincent, 136 Tex. 99, 147

S.W.2d 1072; Finley v. Pafford, Tex.Civ. App., 104 S.W.2d 163; and Gibson v. Gibson, Tex.Civ.App., 202 S.W.2d 288. We understand that the position of appellants is that Elmer W. Laird was, by the definition of "employee," as used in the Workmen's Compensation Act, an employee of Elmer W. Laird, Inc. Article 8309, Section 1, reads in part: " 'Employee' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written, * *". Appellants further insist that the deceased did come within the terms of Article 8309, Section 1a, which, by way of express exception, provides that the president, etc., of a corporation shall not be deemed to be an employee.

■ However, the court was amply warranted in concluding from the evidence, as he presumably did, that Elmer W. Laird, Inc., was a one-man corporation owned by the community belonging to Elmer W. Laird and his wife. The general rule is that where a corporation is organized and used for legitimate business purposes, it will be looked to as a separate legal entity and the court will not sanction its use in such instances where the rights of innocent parties will be defeated. Hildebrand on Texas Corporations, Sec. 5, p. 32; First Nat. Bank in Canyon v. Gamble, 134 Tex. 112, 132 S.W.2d 100, 125 A.L.R. 265; Continental Supply Co. v. Forrest E. Gilmore Co. of Texas, Tex.Civ.App., 55 S.W. 2d 622, 623; and see State National Bank v. Encinal Mercantile Co., Tex.Civ.App., 277 S.W. 398, er. ref.

■ There is certainly no evidence in the record to suggest that at the time the corporate structure of Elmer W. Laird, Inc., was set up, or the salary account arrangement was set up which enabled Mr. and Mrs. Laird to continue the same practices after the incorporation as they had followed prior to incorporation, it was for the purpose of having Laird covered by compensation insurance. But it was clearly not the intention of the Legislature that the owner of a one-man corporation should be entitled to workman's compensation benefits under the Act. Take, for instance, Section 4, Art. 8306, which provides that employers, who do not become subscribers under the Act, shall be liable to their employees for the benefits which are provided for by the Act. While such provision is indeed a protection for the employees whose employers are not subscribers, it is also an inducement to cause employers to become subscribers under the Act by making them personally liable to their employees for workman's compensation. It is very clear here that, if Elmer W. Laird, Inc., had not been a subscriber under the Act, deceased's surviving wife and child would not have sued said corporation for workman's compensation under Art. 8306, Sec. 4, and that a court would not take jurisdiction of such a suit because the corporation is a one-man corporation. In other words, the owner of a one-man corporation cannot, in contemplation of law, enter into a contract to be its employee because a man cannot contract with himself. A court would disregard the corporation fiction if, for instance, Elmer W. Laird, Inc., should have brought suit against Elmer W. Laird for breach of contract, and it were made to appear that Elmer W. Laird, Inc., was a one-man corporation belonging to Elmer W. Laird. This, because a court would not do so vain a thing as to try a case to determine whether an individual, acting in his capacity as the owner of a one-man corporation, could force himself, in his individual capacity, to carry out what, in reality would be but a resolve of such a supposed plaintiff, but in form only would be a contract of the one-man corporation with its owner.

There was evidence also that Elmer W. Laird's salary was not taken into consideration when the premium for the workman's compensation insurance was figured, but since appellants earnestly contend that such evidence was not competent and it is clear that the trial court's judgment was right, we will not extend this opinion by going into the question of the competency

of such evidence, or its bearing on whether deceased was deemed an employee.

■ As indicated above, the finance company which handled the commercial paper taken by Elmer W. Laird, Inc., in its business was domiciled at the same place as Elmer W. Laird, Inc. At the time Mr. Laird received the wound from which he died, the finance company held a certain indebtedness which had been transferred to it by Elmer W. Laird, Inc., the payment of which was secured upon an automobile which had been sold by Elmer W. Laird, Inc. The last payment upon said indebtedness had fallen due. The debtor sent her check by her son to pay off this last payment. Mr. Laird declined to turn over the certificate until either the payment was made in cash, or the check had been collected. Friction had therefore developed in connection with the transaction. When Mr. Laird declined to accept the check as the equivalent of cash, the young man invited Mr. Laird to step outside and settle the matter. Mr. Laird, in apparent acceptance of the young man's invitation to engage in a personal encounter, got up and followed him out. Without giving further details, we deem the evidence was sufficient to support the court's presumed findings that at the time the young man stabbed Mr. Laird, Mr. Laird was engaged in a personal matter. In any event, the court could infer that Mr. Laird was not then engaged upon the business of Elmer W. Laird, Inc.

We considered, in the case of Texas Bus Lines v. Anderson, Tex.Civ.App., 233 S.W.2d 961, the sufficiency of evidence to establish an assault, or an assault and battery. Since the judgment of the court must be affirmed for the reasons heretofore given, it is unnecessary to prolong this opinion further, but in passing, we will say that we do not deem the evidence would have supported a finding that Mr. Laird was guilty of an assault upon the young man who stabbed him.