**MARYLAND CAS. CO. v. POWERS et al.**

**Civ. No. 380.**

United States District Court,
W. D. Virginia, Abingdon
Division.

April 23, 1953.

effective August 26, 1951, and for one year thereafter, covering a 1950 Chevrolet Sedan, to defendant, Scottie Powers. The policy contains the usual omnibus clause, and also the following specific provisions:

"Item 7.(a)   Except with respect to bailment lease, conditional sale, mortgage or other encumbrance, the named insured is the *sole owner* of the automobile: * * *"   (Italics mine),

and Condition No. 24:

"Declarations By Acceptance of this Policy.   The named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

On November 18, 1951, said Chevrolet automobile, while being operated along a public highway in Hawkins County, Tennessee, by Avery Powers, son of defendant Scottie Powers, was involved in a collision with a vehicle owned and operated by defendant, the Mason & Dixon Lines, Inc., and a third vehicle operated by defendant, Donald Dalton, which resulted in the death of Avery Powers and personal injury to others.   Actions at law have been instituted in the courts of the State of Tennessee by certain other defendants against defendant Scottie Powers, in his own right and as Administrator of his son, Avery Powers, and defendant, the Mason & Dixon Lines, Inc., and are now pending.

Plaintiff, Maryland Casualty Company, contends that claims asserted against defendant, Scottie Powers, individually and as Administrator of the Estate of his son, Avery Powers, arising out of the collision, are not covered by its policy of insurance, on the ground that at the time of the accident the defendant Scottie Powers was not the "sole owner" of the said Chevrolet automobile and the said Avery Powers was not operating it by the permission of Scottie Powers, the named insured, because at that time he, Avery Powers, was the owner of the automobile.   Defendants

William A. Stuart and G. R. C. Stuart, Abingdon, Va., for plaintiff.

G. Mark French, Clintwood, Va., and Jones, Woodward & Miles, Bristol, Va., for defendants.

BARKSDALE, District Judge.

This case having been tried by the court without a jury on April 10, 1953, the court doth find the facts specially and states separately its conclusions of law thereon, as follows:

### Findings of Fact.

Plaintiff, Maryland Casualty Company, issued its public liability insurance policy,

contend that coverage did exist. Pending the determination of this action, the plaintiffs in the pending actions in the Tennessee State courts have been enjoined from proceeding further in these actions and plaintiff prays for a judgment declaring that there was no coverage under its policy at the time of the accident.

Scottie Powers purchased the 1950 Chevrolet automobile described in plaintiff's insurance policy in September 1950, and a certificate of title to it was issued in his name. In late November or early December, 1950, Avery Powers, who was attending Hiwassie College in Tennessee, spent a week end at the home of his father near Coeburn, Virginia. Previously, his father had given Avery an old 1935 Ford automobile, which had gotten in such bad condition that it could not pass the inspection required by Virginia law. Consequently, Scottie Powers had directed Avery to junk the Ford and he would give him a new car. During this week end visit, Scottie Powers said to his son Avery, "I am going to give you this car (meaning the 1950 Chevrolet here in question) and you take care of it." Avery then took the 1950 Chevrolet back to college with him. At the same time, in order not to show favoritism, Scottie Powers gave his only other child, an older son, $1,300 in order to even up to him for his gift of the car to Avery. Scottie Powers did not transfer the certificate of title to Avery for the reason that he did not think Avery could dispose of the car if it were titled in his name, because he was not yet twenty-one years of age. Scottie Powers, for his own use, promptly bought a 1951 Chevrolet, and neither he nor any member of his family ever again used the 1950 Chevrolet here in question, and from the time said Chevrolet was delivered to him, Avery Powers used it exclusively. The only time thereafter Scottie Powers ever drove the 1950 Chevrolet was to drive it to the garage to have its brakes relined for Avery. While this work was being done on the 1950 Chevrolet, Avery drove the 1951 Chevrolet of his father. In August 1951, Avery Powers was married, but continued to attend college. Although Avery earned small sums of money in his spare time during all the period here pertinent Scottie Powers supported his son Avery, both before and after his marriage, which support included the necessary expense of operating his automobile. Scottie Powers bought and paid for the 1951 license plates for the automobile. Scottie Powers never transferred the certificate of title to said Chevrolet to his son Avery.

During the taking of the testimony, plaintiff, Maryland Casualty Company, introduced the signed statement of Scottie Powers, setting out the details of his giving said automobile to his son Avery, dated June 26, 1952. This statement had been given to, and was introduced in evidence by, Ben C. Davis, Esquire, Attorney at Law, of Kingsport, Tennessee. Defendants moved to strike out said statement upon the ground that it was a privileged communication between attorney and client. However, it appears by his letter to Scottie Powers of June 4, 1952, that Mr. Davis advised Scottie Powers that he represented plaintiff, Maryland Casualty Company, and the evidence further disclosed that, at the time of the giving of the statement, Scottie Powers was accompanied by his personal counsel, Mr. Kennedy.

### Conclusions of Law.

Upon the facts set out above, my conclusions of law are as follows: First, as to defendants' motion to strike out the statement of Scottie Powers of June 26, 1952, my conclusion is to overrule the motion because it appears that defendant Scottie Powers, at the time of giving the statement to Mr. Davis, knew that Mr. Davis was not his attorney, but was the attorney for the plaintiff, Maryland Casualty Company. However, this ruling is not important, for practically the same facts appear from other evidence.

It is my conclusion that, at the time of the accident of November 18, 1951, there was no coverage under the insurance policy here under consideration. The basis of this conclusion is the determination that, after Scottie Powers gave the 1950 Chevrolet automobile to his son Avery in late November or early December of 1950, he

was no longer the "sole owner of the automobile", as he declared himself to be in Item 7(a) of the insurance policy; that this declaration was material to the risk, and being untrue, rendered the policy void, or at least voidable, at the option of the company.

It is quite true that, before the legal title to an automobile can be transferred in Virginia, the owner is required by section 46–84, Code of Virginia 1950, to endorse an assignment and warranty of title upon the reverse side of the certificate of title and to deliver the certificate at the time of delivering the vehicle. Section 46–85 requires the purchaser to immediately forward the certificate so endorsed to the Division of Motor Vehicles. In construing substantially similar requirements of the original certificate of title act of 1926, the Supreme Court of Appeals of Virginia, in Thomas v. Mullins, 153 Va. 383, 149 S.E. 494, 495, held that, notwithstanding an agreement for the sale of an automobile and the payment of the purchase price, if no assignment of title had been executed and delivered by the seller to the purchaser and no notice of transfer had been given as required by the statute, "then the contract of sale was merely executory and not executed", and the title to the said automobile remained in the seller. The later case of Sauls v. Thomas Andrews & Co., 163 Va. 407, 175 S.E. 760, is to the same effect. And in the recent case of United States v. One Hudson Hornet, D.C., 110 F.Supp. 41, 43, I held that, notwithstanding an agreement to sell, delivery of the automobile and payment of the purchase price, the certificate not having been endorsed and delivered, the vendor nevertheless "was the owner of said automobile". However, in none of the three cases was insurance involved; no consideration was given in any of the three opinions to the question of whether the person who held the legal title was the "sole owner", as that term is used in policies of liability insurance. Under the facts in the instant case, there is no doubt that Scottie Powers continued to be the legal title owner of the 1950 Chevrolet. However, that is not the determinative question here, as it was in the three cases cited above. The question here is whether or not, at the time of the issuance of plaintiff's insurance policy, Scottie Powers was the "sole owner". I do not feel that there is any question about the fact that in this case, when Scottie Powers gave the automobile to his son Avery, he meant it to be a complete and irrevocable gift. He actually delivered the physical possession of the automobile to his son, who thereafter exercised complete and exclusive dominion and control over it. That Scottie Powers meant his gift to be complete and irrevocable is further demonstrated by the fact that contemporaneously he made a gift to his other son of an equivalent amount of cash "to even up". Under these circumstances, it definitely cannot be said that thereafter Scottie Powers was the "sole owner" of the automobile, although he retained the legal title. After the gift, Avery Powers certainly became the beneficial owner of the vehicle.

Byrd v. American Guarantee etc., D. C., 89 F.Supp. 158, affirmed on appeal, 4 Cir., 180 F.2d 246, tends to support my conclusion, although in that case the certificate was endorsed and delivered, but the accident occurred before a new title certificate had been issued to the purchaser.

Royal Indemnity Co. v. Hook, 155 Va. 956, 157 S.E. 414, is an insurance case and is quite pertinent to the issue here presented. In that case, a seventeen-year-old boy, W. A. Goad, wished to purchase from his employer an automobile, which was subject to a conditional sales contract. The employer was willing to sell, but doubtful how to handle the transaction since Goad was a minor. Upon the advice of an insurance agent, the transaction was consummated by having the title to the car placed in the name of the mother of young Goad, purchase money notes were taken, and an insurance policy, upon her signed application, was issued by the agent in the name of Mrs. Goad as insured, the policy including the warranty that the statement of Mrs. Goad in her application that she was the owner of the car was true. Although at all pertinent times, the certificate of title was in the name of Mrs. Goad, the court

said, 155 Va. at page 964, 157 S.E. at page 417:

"The statements contained in the application for the policy which are carried into it are warranted by the applicant to be true. That they are untrue is not in dispute. Mrs. Goad was said to have been the owner when she was not, and the title was clouded by a conditional sales contract. These are not idle stipulations, and it is easy to understand how an insurance company might be willing to issue a policy to A which it would refuse to B. One risk might be good and the other bad. The answer as to ownership was material to the risk and was untrue, and for that reason section 4220 of the Code does not govern.

"The defects noted, but for considerations to be stated hereafter, are sufficient to invalidate the policy."

It is obvious that the situation presented in the Hook case was quite analogous to the situation here presented. There, the title was initially placed and remained in the name of Mrs. Goad by reason of the minority of her son, but nevertheless, the court held that her son was the real owner. Here, the title was retained by Scottie Powers, the father, for the same reason, that is, the minority of his son, to whom he gave the automobile, and I feel no doubt that in the situation here presented, he, the son, should be considered the real owner.

The "considerations to be stated hereafter", mentioned in the above quotation from the Hook opinion, were the facts that the true situation was known to the insurance company, the arrangement having been worked out by its agent, and therefore the court held that, since the insurance company was well aware of the true state of facts when it issued its insurance policy, the policy did cover, notwithstanding the untruthfulness of the statements contained in the application.

In Garlick v. McFarland,[1] Ohio Court of Appeals, Eighth District, the situation was quite analogous to the situation here. Prosen, who held the certificate of title to an automobile, sold it to McFarland, a minor, on a Saturday afternoon. The purchase money was paid, the automobile was delivered, but the certificate of title was neither endorsed nor delivered. It was the intention of the purchaser to come back on Monday with his mother and have the certificate of title transferred to her. However, McFarland, while operating the automobile on Sunday night, was involved in a collision, with fatal results to one person and injuries to two others. It appears from the opinion that Ohio has a certificate of title law similar to the Virginia statute. Prosen had a policy of liability insurance upon the car which contained the same declaration as to ownership as that contained in the policy in the instant case and also contained the usual omnibus clause. In the actions brought by the injured parties to require the insurance company to pay the judgments recovered against McFarland, the trial court held, as a matter of law, that Prosen continued to be the owner of the automobile at the time of the accident on account of the fact that the title had not been transferred as required

1. Since the filing of this decision, the case of Garlick &c. v. McFarland &c., supra, was, on June 3, 1953, reversed by the Supreme Court of Ohio and final judgments for the plaintiffs were entered. Garlick &c. v. McFarland (June 3, 1953), 159 Ohio St. 539, 113 N.E. (2d) 92.

The Supreme Court grounds the reversal upon its conclusion that under the Ohio statute, Prosen (the seller and certificate of title holder) continued to be the owner of the automobile in question at the time of the accident, and that the trial court correctly submitted the question of permissive use by defendant, McFarland, to the jury.

It is to be noted that in the Garlick case, Prosen, the policy holder, was the "sole owner" of the automobile when the policy of insurance was issued, the transfer having occurred later, while the converse is true in the instant case. However, it must be conceded that the opinion of the Supreme Court in the Garlick case does not support the conclusions which I have reached, as does the opinion of the Court of Appeals. But of course, Virginia law governs, and I am satisfied that my conclusions are in accordance with the law of this Commonwealth.

 

by the certificate of title law, and submitted to the jury the question of whether at the time of the accident McFarland was driving the car with the permission of Prosen. On appeal from a judgment holding the insurance company liable, the appellate court reversed the judgment of the trial court. The court said:

"As against the argument that the language of General Code Section 6290–4 is so sweeping in its terms that McFarland, in the instant cases, acquired no title against the seller, Prosen, until he had actually received the certificate of title to the automobile and that therefore the trial court could not find otherwise than that Prosen was still the owner of the car, we point out that the rights involved which the Common Pleas Court was required to adjudicate were not those either of Prosen or of the McFarlands (mother or son), but the rights of third persons to benefits of an insurance policy under General Code of Ohio Sec. 9510–4. That section, as has been noted, makes the proceeds of an insurance policy applicable to judgment creditors in certain instances, 'if the defendant in such action was insured against loss or damage when the rights of action arose', and that question can only be determined by examination of the terms of the insurance contract. It is the view of this court that the sole question before the trial court was one of interpretation of an insurance policy and that there was, in the first instance, therefore no question to be presented to a jury."

The court held that, since McFarland had bought and paid for the car prior to the accident, although the certificate of title had not been transferred, his use of the vehicle was by virtue of his ownership and did not constitute use by "permission of named insured" within the meaning of the omnibus clause. There was, therefore, a final judgment for the insurance company.

For the reasons set out above, it therefore follows that it is my conclusion that, at the time of the accident on November 10, 1951, described in the complaint, there was no coverage under the insurance policy here under consideration. A declaratory judgment will be entered in accordance with the prayer of the complaint.