241 F.2d 363
 The HARFORD MUTUAL INSURANCE COMPANY, Appellant,
v.
Dorothy Lee GORBET, a Feme Sole, and Ronald Robinson, a Minor; Thomas W. Norsworthy, Jr. and wife, Mrs. Thomas W. Norsworthy, Jr.; James Ira Deloache and wife, Mrs. James Ira Deloache, Appellees.
 No. 16056.
 United States Court of Appeals Fifth Circuit.
 January 9, 1957.
 
 John J. McKay, Charles N. Avery, Jr., Austin, Tex., for appellant.
 James U. Thurman, Leslie Shults, Shults & Thurman, Dallas, Tex., for appellees.
 Before HUTCHESON, Chief Judge, and JONES and BROWN, Circuit Judges.
 JOHN R. BROWN, Circuit Judge.
 
 
 1
 The question here is whether an insurer can cancel a policy by accepting its surrender from one neither the named insured nor the agent of the named insured. The District Court's answer obviously was in the negative. And we agree.
 
 
 2
 The facts are amazingly simple: Kenneth and Dorothy Gorbet were married from April 4, 1950, until a divorce on May 12, 1954. Two years before this insurance controversy arose, Kenneth, by formal Texas Motor Vehicle Assignment of Title, transferred to Dorothy, title to the Studebaker car. Hoskins v. Carpenter, Tex.Civ.App., 201 S.W.2d 606, writ refused NRE. The Studebaker was, and continued to be, her separate property. Belkin v. Ray, 142 Tex. 71, 176 S.W.2d 162; Story v. Marshall, 24 Tex. 305, 306; Forman v. Glasgow, Tex.Civ.App., 219 S.W.2d 845.
 
 
 3
 In January 1954 Kenneth's business (a community activity, of course), Gorbet Lawn Sprinkling Service, obtained needed funds by a bank loan. Put up as part of the collateral demanded by the bank was Dorothy's Studebaker. The bank required insurance. On January 30, 1954, Kenneth obtained from Harford's authorized agent a Texas Standard Combination Automobile Policy which listed Kenneth L. Gorbet as the "name of insured." When Dorothy learned, within a few days, that the policy was in Kenneth's name, she informed Harford's agent that she was the owner and requested that the policy be corrected accordingly. This was done by Harford's agent affixing to the original policy (then in the bank's hands) a Texas Form 64 General Change Endorsement.[1] Kenneth, learning of this within a few days when he saw a confirmation copy of the endorsement which Harford had mailed to Dorothy, was somewhat annoyed, but, acquiescing fully without protest either to the bank or to the insurer, impliedly ratified Dorothy's acts. As between Dorothy and Harford, therefore, she became,[2] as of the date of the original issuance of the policy, January 30, 1954, the named insured.
 
 
 4
 In April, domestic tranquility ceasing or diminishing, a divorce was agreed to by each, and by property settlement contract of April 16, 1954, later approved in the divorce decree of May 12, 1954, Dorothy was to have, amongst other things, the Studebaker car.[3]
 
 
 5
 To free the Studebaker, Kenneth, with the bank's permission, substituted another vehicle. Since insurance on it was likewise required, Kenneth, following instructions obtained by informal discussion with Harford's agent as to how the policy could be cancelled, obtained the original Studebaker policy of January 30, 1954, from the bank and in the early part of May took it to Harford's agent where the agent purported to cancel it as of April 30, 1954.
 
 
 6
 At that time the policy showed on its face that Dorothy was the named insured.
 
 
 7
 Harford's agent made no inquiry[4] as to Kenneth's right to surrender his wife's policy. The agent was ignorant, however, of domestic strife, the impending divorce, or the plan to divide property including the insured vehicle.
 
 
 8
 Harford, entreating us so eloquently for literal, eye dotting and tee crossing compliance with its own contract, finds itself thus in the position of having ignored altogether the simple, plain words of its policy:
 
 
 9
 "22. cancellation: This policy may be cancelled by the named insured by surrender thereof or by mailing to the company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the company by mailing to the named insured at the address shown in this policy, written notice stating when * * * such cancellation shall be effective * * *." (Emphasis supplied.)
 
 
 10
 It seeks to justify this by an intricate argument[5] based on Texas Community Property Laws, Vernon's Ann.Civ.St. art. 4619 et seq., the nature of this contract as community rather than separate property, the incapacity of Dorothy, as wife, the right of Kenneth, as husband, exclusively to handle and manage community property (the insurance policy) and the like.
 
 
 11
 But we find it unnecessary to explore these engaging possibilities. Harford made a contract with Dorothy. It did not, as between insurer and assured, become less her contract even though the funds to pay for it may have come from an outside source, community, or otherwise. She had excellent reasons[6] for insisting that she be named as the contracting party.
 
 
 12
 Whatever the rights may have been with respect to this policy as between Dorothy and Kenneth, between creditors of the community and either of them or Harford, between Harford and Kenneth, or between any of them and the United States as the ubiquitous tax collector, this was a simple contract between Harford and Dorothy. It agreed that it would cancel only by notifying her in writing or by accepting from her the surrender of the policy. It did neither. For good or bad reasons, it chose to rely on another (Kenneth) who, in these circumstances, had neither actual nor apparent authority for her. Harford failed to heed the words of its own creation and that was fatal. Gulf Insurance Company v. Riddle, Tex.Civ.App., 199 S.W.2d 1000; Duff v. Secured Fire & Marine Company, Tex.Civ.App., 227 S.W.2d 257; Suennen v. Evrard, 254 Wis. 565, 36 N.W.2d 685, 8 A.L.R.2d 200; Tarleton v. De Veuve, 9 Cir., 113 F.2d 290, 132 A.L.R. 343, certiorari denied 312 U.S. 691, 61 S.Ct. 710, 85 L.Ed. 1127.
 
 
 13
 The policy was never cancelled and was, therefore, in full force when Dorothy's son, using the car with her permission, had the accident of June 6, 1954. Out of this accident arose the claim of damages by injured third parties asserting negligent operation of the vehicle. Harford declined to defend, disclaimed all liability, and sought a Declaratory judgment of non-liability. The District Court's declaration that the policy applied and was in full force was correct.
 
 
 14
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 It stated: "64. General Change Endorsement
 * * * * *
 "This endorsement forms a part of Policy No. TX-901058 issued to Kenneth L. Gorbet by the The Harford Mutual Insurance Company * * * and is effective from January 30, 1954 It is agreed that as of the effective date hereof the policy is amended in the following particulars.
 It is understood and agreed that the named insured is amended to read:
 Dorothy Lee Gorbet
 1027 East 45th, Austin, Texas
 * * *."
 
 
 [2]
 Harford's contention that a Texas Standard Form 3 Assignment of Interest endorsement rather than the General Change Endorsement, note 1, supra, should have been used because Clause 21 of the policy provided, "Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon * * *" is totally without merit. This provision, as well as the Form 3 for use to effectuate assignments plainly relate to transfer of the insurance contract to transferees, lessees, purchasers, etc., of the described automobile, the subject of the insurance, and not, as here, to an authorized act making the policy reflect who the real assured was from the beginning. And, of course, if the transaction was an "assignment," the insurer's consent is manifested in writing which is all the policy required
 
 
 [3]
 "3. * * * [Kenneth] * * * agrees that title to the * * * Studebaker * * * shall be vested in * * [Dorothy] as a part of her separate property and estate, and * * * [Kenneth] * * * agrees to pay that indebtedness in the principal sum of $500.00 due the Texas State Bank at Austin, Texas, in order to clear the existing indebtedness against said automobile * * *."
 
 
 [4]
 The record leaves the overwhelming impression that as a matter of client relationship and good will, Harford's agent followed a general practice of assuming that in these family situations a member of the family had the authority to deal with the policy. Following this practice, it was a matter of complete indifference that Dorothy, rather than Kenneth, was the named insured
 
 
 [5]
 Harford cites, among others:
 
 
 [23]
 Tex.Jur. § 63, p. 86; Speer, Marital Rights (3rd Ed.) § 373, p. 455, Proceeds of Insurance Policies; Kemp v. Metropolitan Life Ins. Co., 5 Cir., 205 F.2d 857; Davis v. Cayton, Tex.Civ.App., 214 S.W.2d 801, 804; Commissioner of Internal Revenue v. King, 5 Cir., 69 F.2d 639, 641; Boomer v. Massachusetts Bonding & Ins. Co., Tex.Civ.App., 148 S.W.2d 945, writ dism.; Bates v. Bates, Tex.Civ.App., 270 S.W.2d 301; Holt v. City Nat. Bank of Bryan, Tex.Civ.App., 273 S.W.2d 902, writ ref. NRE, Bobbitt v. Alamo Casualty Co., Tex.Civ.App., 241 S.W.2d 464, writ ref. NRE
 Warthan v. Haynes, Tex., 288 S.W.2d 481, reveals the difficulties faced by the Texas Courts in trying to rationalize the flood of precedents into a consistent pattern and serves as a reminder that with collateral implications of awesome proportions (e. g., in income and estate taxation and planning) we should, unless the nature of insurance is directly presented, refrain from adding to the confusion. Little is gained, much is risked if we try to analogize here.
 
 
 [6]
 The stream of litigation in this Court proves that she may have had a lawyer's prescience. Had she not insisted on being the named insured she ran the risk of the insurer declining liability had she, rather than Kenneth, given permission to another to use the car, see e. g., United Services Automobile Ass'n v. Russom, 5 Cir., 241 F.2d 296, and for accidents while driven by herself or Kenneth, with actual ownership clearly in her, not in Kenneth, they ran the risk, if the declaration showed Kenneth as the named insured, of the insurer asserting an alleged breach of warranty of ownership under Item 6(a) of the policy that "Except with respect to bailment lease, conditional sale, mortgage or other encumbrance the named insured is the sole owner of the automobile," see, e. g., General Ins. Co. of America et al. v. Western Fire & Casualty Co., 5 Cir., 241 F.2d 289; or, perhaps would, at least, have exposed them to the perils of proving or disproving materiality, V.A.T.S. Texas Ins. Code, Art. 21.16