ALLSTATE INSURANCE COMPANY, Appellant,

v.

Carl McKENZIE et al., Appellees.

No. 16606.

United States Court of Appeals
Fifth Circuit.

June 29, 1957.

---

3.  38 U.S.C.A. § 551.

Gibson Gayle, Jr., Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for appellant.

Ben Ramey, Houston, Tex., for appellees.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

HUTCHESON, Chief Judge.

Alleging in detail:[1] the issuance to one J. A. Gabehart of an automobile policy on a 1947 Ford automobile; the transfer of the car without plaintiff's knowledge or consent to George Gabehart; its collision many months afterward with another car; and that a demand had been made upon it to defend suits brought as a result thereof; plaintiff sought a declaratory judgment: that the sale of the automobile had effected a cancellation of the insurance policy and all the rights and privileges of either of the said Gabeharts under it; and that plaintiff be discharged of any obligation thereunder growing out of the matters and things alleged.

In defense of the suit, McKenzie, one of the defendants, admitting that he was involved in the collision and generally denying the allegations, prayed that plaintiff be denied the relief sought and required to defend the suit.

The defendants, J. A. and George Gabehart, admitted the issuance of the policy, and that the car had, as alleged, been transferred by J. A. Gabehart to George Gabehart, but denied that the transfer had effected any change in the legal obligations of the plaintiff under the policy to defend lawsuits growing out of the operation of the car by its then owner, George Gabehart.

Thereafter, plaintiff moved for a summary judgment on the ground that there

---

1. That on or about July 16, 1953, it issued its policy of insurance No. 29593710 to one J. A. Gabehart on a 1947 Ford automobile to cover the period from July 16, 1953, to July 16, 1954; that on or about June 17, 1954, there was an automobile collision between that automobile, then being driven by J. A. Gabehart's son, George, and an automobile in which one Carl McKenzie was riding as a passenger; that as a result of that collision McKenzie has asserted a claim and filed a suit against J. A. and George B. Gabehart, who in turn have made a demand upon the plaintiff that it take over and handle the lawsuit filed against them; that at the time the collision occurred, J. A. Gabehart was no longer the owner of the automobile but many months prior thereto the title to it had passed to George Gabehart; and that such passing of title had occurred many months prior to the accident and plaintiff had not consented to, indeed had no knowledge of, such transfer and title of ownership.

was no issue of fact in that the undisputed facts established that long before the accident J. A. Gabehart had sold the automobile to his son, George Gabehart, and that at the time of the accident the Ford automobile was not owned, maintained, and used for and under the declarations stated and made a part of said policy.

The pleadings standing thus, the cause came on for trial, and was submitted upon stipulated facts.[2]

Denying the motion for summary judgment, the district judge, on stipulated facts, determined the cause against the plaintiff and gave judgment accordingly.

As shown by his findings of fact, which of course follow the stipulation, and his conclusions of law, the court determined that because George Gabehart was an unemancipated minor and plaintiff had knowledge and notice of his minority and received an extra payment of premium when the policy was issued because when the policy was issued it was understood that George would drive the automobile, the company, by its acceptance of the higher premium waived and was estopped to set up the defense.

Appealing from the judgment, the plaintiff, urging upon us that there is no basis in law or in fact for the finding or conclusion that the policy survived the transfer of title to George without notice thereof to and consent thereto being given by it, cites in support Bettinger v. N. W. National Cas. Co., 8 Cir., 213 F.2d 200; Byrd v. American Guarantee & Liability Ins. Co., 4 Cir., 180 F.2d 246; Maryland Cas. Co. v. Powers, D.C., 113 F.Supp. 126; Indemnity Ins. Co. v. Mahaffey, Tex.Civ.App., 231 S.W. 861; Ohio Cas. Co. v. Torres, Tex., 300 S.W. 2d 947.

The appellee relying entirely upon such cases as Insurance Company of Texas v. Stratton, Tex.Civ.App., 287 S.W.2d 320 and our case of General Insurance Company of America v. Western Fire & Casualty Co., 5 Cir., 241 F.2d 289; Traders & General Ins. Co. v. Lucas, Tex.Civ.App., 281 S.W.2d 188; to which may be added Hartford Mut. Ins. Co. v. Gorbet, 5 Cir., 241 F.2d 363; urges upon us that while the general rule is as stated and claimed by the appellant, that a transfer of title without notice to and consent of the insurance company defeats the policy, the particular facts of this case make that rule inapplicable.

2. These are: (1) that George Gabehart is the son of J. A. Gabehart, and is presently nineteen years of age; (2) that at the time of the application for the policy, George was single and a member of his father's household; (3) that thereafter and about six months prior to the accident in suit he married and left his father's household and set up a household of his own; (4) that at the time of the purchase of the insurance, J. A. Gabehart was the owner of the automobile; (5) that at the time it was purchased, J. A. Gabehart paid an extra premium because George Gabehart, his minor son, and then a member of his household, was expected to drive the car; (6) that sometime during the summer of 1953, an agreement was made between father and son to sell the car to George for $400, $200 paid down and the balance in monthly payments; and that the full amount of $400 was paid several months prior to the accident; (7) that George took the automobile with him when he left the household of his fa-

ther and although the certificate of title remained in the name of J. A. Gabehart, it was delivered to George Gabehart in the summer of 1953; (8) that no notice was ever given by J. A. Gabehart or George Gabehart or anyone else for them or on their behalf to plaintiff insurance company, nor did the company nor its agents have any knowledge of the sales agreement or of the marriage of George or of his setting up a separate household; (9) that the $400 which George paid came from his personal earnings; (10) that after George took the Ford and set up his separate household, J. A. Gabehart continued on occasions to use it; (11) that after setting up his separate household and taking the Ford with him, George generally kept the automobile in his possession, purchased new license plates when required and purchased and installed a rebuilt motor thereon; (12) that at any time after George had paid for the automobile, J. A. would have assigned the certificate to him if George had asked him to.

We do not think so. Those cases are without application under the agreed facts in this case. They are all cases in which it was found that the insurance company had knowledge of the situation and consented to it. It is stipulated that there was no knowledge of, or consent to, the transfer to George, and it is plain, indeed it is hornbook law that unless the terms of the policy are to be written out of it or disregarded, the judgment should have been for the insurance company. The fact that the company, if advised of the facts, might have accepted the situation and recognized the continuing existence of the policy is of no importance. It had a right under the policy to know any facts affecting the change of risk and to determine for itself whether by continuing the policy in force it would accept the changed risk. If the fact, made so much of by the appellee and the district judge, that the company had charged the higher premium applicable where use is by persons under twenty-five years of age because it was known that George, a minor, would sometimes drive the car, were material and we think it is not, it would but emphasize the fact that the company should have been informed that George had taken the car entirely over and given the right to determine whether it would accept the greatly increased risk attendant thereon.

Counsel have cited and to some extent discussed the Texas statutes dealing with the effect of marriage upon the disabilities of minority, and appellant has cited to us Pittman v. Times Securities, Tex.Civ.App., 301 S.W.2d 521, construing and holding that Section 3(t) of the Texas Probate Code, V.A.T.S., which went into effect on January 1, 1956,

emancipated from the legal disabilities of minority both males and females. We do not think, however, that this is an important consideration here upon the validity of the contract, for, as a minor, George was entirely competent to contract for the purchase of the automobile and the contract was, and remained, valid until disaffirmed, and there is no evidence or even claim that it was disaffirmed. To the extent that the question of minority might be supposed to enter into the risk, it is equally unimportant because whether or not legally emancipated, he was in fact under twenty-five years of age.

The judgment is reversed and here rendered for appellant.

CAMERON, Circuit Judge (dissenting).

In the written application which constituted a part of the policy sought to be cancelled, the son, George Gabehart, was named as one who would use and operate the car which was the subject of the insurance. The company agreed to defend any suit filed and pay any judgment rendered against him. It received an extra premium for that protection. It has kept that premium and has not tendered it back in its action to cancel the policy.[1]

As far as George was concerned, the company's liability was not affected by the transfer and any provisions the policy may contain relating thereto have no materiality. The company owed him the same protection before the transfer as after. The risk of the company in relationship with George was not increased or varied by the transfer.[2]

---

1. The insurance company has, in fact, retained the entire premium collected by it. Under the universal principle that a party cannot "eat his cake and have it too", one seeking cancellation must restore what he has received from the other as a condition precedent. "The very idea of rescinding a contract implies that what has been parted with shall be restored on both sides." 12 Am.Jur., Contracts, § 451, p. 1031. And cf. 9 Am.Jur.,

Cancellation of Instruments, pp. 384, et seq.

2. In a case from the California Court of Appeals dealing with the liability of an insurance carrier after transfer, Sly v. American Indemnity Co., 1932, 127 Cal. App. 202, 15 P.2d 522, the rule is stated in apt language:

"The essential and important factor of this [i.e. the company's] reasoning rests

None of the cases cited by the insurance company involved facts closely resembling those in the case before us.[3] The naming of George in the application and the payment of an extra premium bring in a factor not heretofore dealt with and show, in my opinion, a clear purpose to protect him from liability under the facts before us. To blaze a trail by releasing the company from its policy obligation to protect George by applying a portion of its fine print under the facts set forth in the majority opinion is, I think, to exalt the "letter which killeth" and to disregard the "spirit which giveth life."[4] As to him, therefore, I think it is clear that the judgment of the lower court should be affirmed.

I think, moreover, that the judgment should be affirmed as to the father, J. A. Gabehart, the named insured, for failure of appellant to tender the unearned premium, a condition precedent to maintenance of an action for cancellation. I therefore dissent.

in the contention that change of interest increases the risk * * *

"In an action by such person [the one injured] against the insurer, violation by the assured of some condition in the policy is a valid defense only when it appears that by reason of such violation the insurer was substantially prejudiced * * * But it is expressly stated in the policy of insurance that insurance provided by the liability peril clause is so extended as to be available to any person lawfully operating the insured automobile provided such operation is with the permission of the assured named in the policy * * * It is therefore apparent that no increase in risk to appellant occurred by reason of the attempted transfer of interest in the automobile by its insured."

3. Those decisions are largely based, in fact, upon terms contained in the insurance contracts voiding the policies there involved in event of transfer of ownership. Neither the majority opinion nor appellant's brief refers to any such provision in the policy before us and apparently there is none. The nearest approach to such a provision is tucked away under a misleading caption:

"VIII. Policy Period, Territory, Purpose of Use. This policy applies only to accidents which occur and to direct and accidental losses to the automobile which are sustained during the policy period, while the automobile is within the United States of America, its territories or possession, Canada or Newfoundland, or is being transported between ports thereof, and is owned, maintained and used *for the purposes stated* as applicable thereto in the declaration." [Emphasis supplied.]

There is no intimation that George was using the car at the time of the accident *for any purpose* other than as shown in the declarations which was for "pleasure and business."

4. The quoted words announce good law as well as good gospel: "In fact it is the substance of an agreement rather than its form—the spirit rather than the letter—which must control its interpretation." 12 Am.Jur., Contracts, § 242, p. 776.